Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. Please be seated. Before we begin the arguments this morning, my colleague Judge Prost has a motion and the court is pleased to entertain the motion at this time. Thank you Judge Lynn. I move the admission of Jessica Kelly Fender who is a member of the Bar of Good Standing in the highest court of Illinois. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications and I'd just like to add on my own that they do say that as one gets older the time goes by more and more quickly and that certainly seems true here because it's just astounding to me that our year with Jessie is coming to an end and don't tell Jessie but I'm working on a secret plan to try to keep her with us in perpetuity. On the other hand while the years gone by quickly in certain ways it really feels like she's been around for a very long time and that's because I've really come to depend on her in so many ways, her good judgment, her steady hand, her good humor, the clarity of her thinking and writing and her commitment to the law and I really miss her if and when I do let her go and if and when she leaves we look forward to her continued membership as a part of our family and I'm sure Judge Lynn will try to urge her since she will return to Chicago to resume her participation in the Lynn Inn in Chicago which I think she's already committed to doing. Yes. You're very persuasive motion is happily granted. Welcome to the court and if you would turn and face the courtroom deputy you can take the oath. Do you solemnly swear to the court that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Welcome to the bar of the United States Court of Appeals for the Federalist Court. Welcome. Alright the first case, the first cases we will hear this morning are Appeal Number 2009-5008 Bush v. United States and 2009-5009 Shelton v. United States. Good morning Mr. Redding. Good morning Your Honors. The issue in this case actually is simple. It comes down to was a statutory notice of deficiency required to the IRS could validly assess a tax liability resulting from the settlements the taxpayers had entered into. And your theory is that because there was no notice of deficiency you were precluded from litigating the tax liability of the tax court, is that correct? That is correct Your Honor. Help me, I'm not sure that I understand why that's true. Under 6330, as I understand it, where there has not been a notice of deficiency, the taxpayer can oppose collection proceedings and litigate the amount of the underlying tax liability and take that to the tax court as was done in the Namaco case. That's kind of a back door approach and it only, I think what you're talking about are the collection due process proceedings once a notice of final intent to levy on assets has been issued which takes place like six months into the collection process or after a federal tax lien has already been filed. And then you have to go through a collection due process hearing before the IRS and then can take that result to the tax court on basically an abuse of discretion standard. That is not the same. Well it's not an abuse of discretion on the tax liability issue. It's not a question of discretion on interpretation of law. That is correct Your Honor. The right to a prepayment form, however, which is the big distinction, is that if a statutory notice of deficiency is issued, you can file a petition with the tax court to challenge the asserted tax liability before payment is mandated or required. But are you agreeing that this due process procedure was available to the taxpayers here that they could have resisted the collection and taken the tax liability issue to the tax court? To be honest, Your Honor, I'd have to look back in the time frame as to when the CDP hearings became available because it was fairly new in the context. 1998, I think. I think you're right. Perhaps they could have. Frankly, that's not an issue that we've ever looked at or considered because our focus has been on the fact that in our notice of deficiency is required under the code. That allows you then to go into the tax court with a much broader authority within the tax court. And for example, if you go through a collection due process hearing, the review that the tax court can conduct is limited to what is presented in the hearing at the CDP hearing. You have no rights to Once it goes to the tax court, there is no further right to develop the case or evidence. It's reviewed solely on the record from the appellate appeals officer's hearing. But what in this case would have prevented you from making the necessary record in the appeals officer's hearing? Again, for one thing, in the collection due process hearing, there are no discovery rights. It's just a completely different process, Your Honor. The burden is totally on the taxpayer to come in and make his entire presentation in one hearing. There is no opportunity to conduct discovery. There is no extensive briefing review. It is just a completely different statutory provision and opportunity. I grant you that the opportunity theoretically would have existed, I think, in these cases. Of course, that's not the route we chose to take. And the other factor, once you get into these cases, is that you're also precluded at that point from then paying the contested that a collection due process review becomes moot once the liability is satisfied. All the CDP review in the tax court addresses is whether the government was appropriate in sending its immediate intent to levy on assets of the taxpayer or whether the IRS properly filed a notice of federal tax lien. Right. But apart from the ability to litigate the underlying tax liability in that proceeding, you would be able to say, well, you can't collect because you had to issue a notice of deficiency. You could litigate this very issue that's before us using that procedure. In fact, one of the cases which you rely on so heavily involved exactly a taxpayer taking that route. Exactly right. And I'm not saying that that route could not have been available. I am saying it's a radically different route. I'm pausing because I'm having to think through it because the procedures are really different and that hasn't been addressed in the briefing and I'm trying to address that ad hoc. Of course, in this case, because the tax was paid, then you filed the action for refund. Normally, in that forum, then the liability would be litigated and an appropriate resolution reached. But the basic thrust of your argument here is that it's not so much the liability as such, it's the failure of the notice in the first place. But there seems to me to be something sort of unfair in at least the government's posture in this case because in effect you're saying because the government failed to give us the notice and we paid the tax, if the court finds that a notice was required, there's no way to correct this. There's no way to give a new notice and then litigate. It's just the government's out of luck. Something strikes me as just terribly unfair about that. Normally, I don't look at the government as being subject to such unfairness, but you see what I'm getting at. I understand your argument, and I do acknowledge that. There are instances, however, under our tax law where a bright line, you've lost or you've won because of procedural errors, is simply part of the law. And whether that result is fair or unfair isn't really the determining factor. I mean, here there isn't even a showing that there's any prejudice. There's no evidence that I'm aware of and there was no record developed as to whether even there was something to litigate in terms of the amount at risk. As the amount at risk, Your Honor, that's not an issue. That's not what would have been litigated. So what's the partner-level factual determination that you're claiming exists in this case? The partner-level factual determination is actually the determination that they could not take into account for purposes of the amount at risk, the partnership debt, and that they were limited to the amount of their capital contribution. That is itself a partner-level determination, and here's where the whole issue really comes into focus. There is no question that the agreements in this case agreed there are no changes to partnership items, the issues that are in fact determined in a TEFRA proceeding, and then goes on and agrees that at the partner level, a non-partnership item, the partner will limit his amount at risk to the amount of the capital contribution. That is a partner-level determination. Now, it was made in the closing agreement. I don't dispute that that is a final and binding determination. We weren't going to re-challenge that. The argument wasn't that you could re-challenge it, but if I can step aside or if I can break this into two parts, TEFRA proceedings are directed solely at the items basically on the partnership tax return and how they're allocated to the partners. In this settlement, the IRS and the taxpayers agreed that everything on the partnership tax return was in fact valid and correct, no changes. That means the partnership debt existed. That means the capital contributions were valid. That means the losses claimed with regard to the movies that were acquired were valid. In other words, there was no partnership item which affected the amount of at-risk capital. Absolutely. But you agreed that if a partnership item had affected the amount of at-risk capital that the notice of deficiency would be dispensed with. Probably. I'm not going to go quite 100% that far because there are some exceptions. In fact, in the notes I made for the presentation today, I used the example that had the settlement agreed that the partnership debt was invalid, that there wasn't a partnership debt. Then the adjustment would be just a mathematical adjustment flowing down from the partnership. But I'm still a little unclear on what the answer is to my question. The government maintains that they could determine the partner-level deficiencies using the settlement agreement and past tax returns. Do you disagree with that? Yes, ma'am, I do. How so? They could determine his amount at risk, and from that you could make a calculation of what would the liability be if this is the only thing we were to look at. And that could be done mathematically. But a notice of deficiency is a determination of what your liability is, what your actual tax liability is, taking into account everything relevant to the partner's tax year. Right. He could have, had a stat notice been issued, we could have raised in the defense, in the tax court, not that he was at risk for more. That was binding. We don't dispute that. He could have raised, as we did in the refund claims, that he was entitled to certain offsets under the contract, under the settlement agreement, against that liability for overpayments that resulted in later years, under the very terms of the closing agreement. Those offsets, I argue, I believe, could have properly been considered in the tax court in determining his ultimate tax liability for the year. Not just what would the fictional liability be if the only thing we were looking at were the at-risk adjustment, but everything else related to the taxpayer. He could have also raised, for example, and this is one of the most common ones that actually happens in TEFRA cases. Had he gotten a stat notice here, he could have gone in and, if appropriate, argued that income averaging should have been used by introducing his tax history for the prior four years. And in some cases, that will substantially reduce the taxpayer's tax liability. All of those kinds of factors, in some instances it can be argued that one spouse on a joint return is not liable. The other spouse is. That argument can't be made with a partnership item-related assessment, except in a later refund claim. If a stat notice is required, that is one of the defenses that can be raised in the stat notice. But this is all these potential defenses and offsets, that's all theoretical. I mean, you haven't made it showing that there was anything to litigate, right? Your Honor, the offsets are not theoretical. This case involved the claims for the overpayments in later years, and we didn't bring it up on appeal. And we conceded some of them in the lower court because of the cost and complexity of continuing to pursue them. The record will reflect that included in these refund claims were the claims that the government had failed to properly apply the offsets from subsequent years called for under the closing grant. That issue would clearly have been focused in a much more facile proceeding in the tax court where we could have gone in and introduced our evidence on that, argued it, and briefed it in a prepayment form. Those issues were much less important than this one in balancing the cost of litigation to the benefit of those issues in balancing the restrictions on the size of briefing. The decision was made not to appeal one issue, but we did argue, brief, and try in the tax court, I mean in the court claims. And in that proceeding, in order to expedite the case moving through, we had conceded, I think it was three other bases for such refund claims. Those did exist in this case. Now, we don't know what the outcome of all of those claims would have been, but they were there. They were valid claims. There were valid disputes. Whether or not we would have prevailed on them hinges on some highly technical tax aspects, for example, as to whether or not the later increases in at-risk would have increased as allowable investment tax credits in the subsequent years. The government says no. I believe they should have. But the amounts involved were not worth ultimately litigating in these cases. Are there other potential issues involved in determining the ultimate tax liability on the partner level? In all honesty, Your Honor, as to Mr. Bush and Mr. Shelton, I can't answer that. We have never reviewed whether or not income averaging might have reduced liability. That wasn't the focus of this case. Is it possible? Yes. It's highly possible. That was a very common factor back in those years, that when you added back adjustments to some partnership or investment that a taxpayer had been in, suddenly his adjusted gross income is proportionally substantially higher than on the original return. On the original return, he didn't use income averaging because it was consistent with his prior years. But I'm not sure. So are you asking us to conclude that there's something more than a computational adjustment at stake in this case because in theory there might have been issues? No. I'm asking this court to apply the law as Congress wrote it and to determine that a stat notice was in fact required under Section 6230 and 6231 and consistent with the other courts that addressed the consequences of failure to issue a stat notice when required that that invalidates the assessment. I don't think you have to look beyond that to the equity or merits. Just as you don't look beyond the equity or merits of a claim when the government comes in and defends that the taxpayer was two months late in filing a refund claim. And that argument is based on your construction of the computational adjustment definition as requiring a change. You read this provision 6, subsection 6. Yes, Your Honor. As requiring a change in the value that will . . . Well, you have to actually work through three statutes, 6231A6, which is the computational adjustment definition. Yes, which is what I'm referring to. Yes, Your Honor. So your case depends on construing that definition high where you construe properly reflects the treatment under this chapter, subchapter you read as requiring a change in the partnership. Yes, Your Honor. But you don't even have to put in a word of change. It says the treatment under this subchapter. Right. This subchapter is subchapter C of Chapter 63, which is the TEFRA partnership procedures related to partnership items. It only relates to partnership items, how they're determined on the partnership return passed through to the partner. Nowhere is at risk ever considered at the partnership level. It is not a partnership. I thought that was not your point. I thought your point was that at risk could involve a computational adjustment if the change in the at risk capital resulted from a partnership item, but that here it didn't result from a partnership item. I hear what you're saying. That is a different issue. At risk. But you're making that argument. No, I'm not. You're not? Well, let me express it if I may. There are things that can change the amount at risk that start out as a partnership item. Right. The amount of partnership debt is a partnership item. Right. So if that were what happened, then this would be a computational adjustment. This could be a computational adjustment. Yes, Your Honor. Because it would just have a mathematical effect then on the amount at risk. Right. Your theory is not that every at risk capital issue fails to qualify as a computational adjustment. No, Your Honor. It's that the actual issue of at risk is not a partnership item or determined at partnership level. In this case. In any case. In any case. Whether or not the partner is at risk is not determined looking at the partnership level. I have trouble with that. It seems to me that you have a decent argument that if the at risk capital isn't affected by a partnership item, that it's not a computational adjustment. But I don't see how you can claim that every single at risk determination falls outside a computational adjustment. I'm not, Your Honor. I'm not. The at risk issue is itself an affected item. It's a non-partnership item. I understand. But there are partnership items that can directly affect it and cause it to be computationally changed. But the at risk determination itself is not made at the partnership level. Let me compare this to the... And then you say that that's required and those are the only items that can be considered computational items. Your Honor, that is what the definition says. It says to properly reflect the treatment under this subchapter. Well, whether or not the partner assumed part of the partnership debt is not determined under that subchapter. It's not determined at the partnership level, allocated under the TEFRA rules, or dealt with under the TEFRA rules in any way, shape, or form. The other code sections then go even further. Section 6230A2A1 provides specifically that the stat notice requirements shall apply to affected items that require a partner level determination. Now, again, the question comes back to what's a partner level determination. Here, the whole assessment is based on a partner level determination that we agree that our assumptions were invalid. All right. I think we understand your point. You've run over, but we'll restore your five minutes of rebuttal. Let's hear from the other side. Thank you, Your Honor. So what about 6330? Was it available to the taxpayer here to resist the collection on the ground that there was a failure to provide a notice of deficiency and also to challenge the tax liability because there was a failure to provide a notice of deficiency? If I understand your question correctly, Your Honor, as to whether 6330A applies in this case to exempt the notice of deficiency requirement or not. Well, not now, but whether it did. Yes. Yeah. And our position is it clearly did by the terms of the statute, also by the statutory scheme as how it operates, as well by the precedent of this court. If you look at 6230A, it says, and it's on 59 of the government's. 6330 is what I'm talking about. Oh, 63. Oh, I'm sorry. Yes. No, I believe that they would have had the right to go to contest the, to challenge the collection in a CDP proceeding. On the ground that there was a failure to provide a required notice of deficiency. No, I believe they would have. No, I understand your position that there wasn't. But under their theory, they could have presented their theory that a notice of deficiency was required and wasn't given. They could have presented that as a ground to resist the collection in the 6330 proceeding. I believe so because you have the opportunity to claim that the liability itself was invalid. You can do both. You can say you can't collect because you didn't give a notice of deficiency and you can't collect because we don't owe any tax. As I understand, yes. Right. That would be within the scope of what you can consider in an administrative CDP hearing. Okay, so the only… Which is then revealable to the tithe, which is then revealable by the taxpayer, yes. Right. So the only case involved that supports the taxpayer on being able to raise this issue in a refund proceeding is the Fourth Circuit case in Singleton, or whatever the name of it is, which predates this 1998 6330 procedure. So the question I have is why isn't there a waiver by the taxpayer's failure to follow the 6330 procedure of this objection to the failure to give a notice of deficiency? Well, I don't want to hopefully argue against myself in this particular context. But as to why there isn't waiver, because I think they're making… I believe that they're making a slightly different claim than… I mean, they're raising the same claim in a different posture. Well, that's right. But why should… I think it's that both you and the taxpayer agree that they could have resisted the collection on the ground that there was a notice of deficiency required and that it wasn't given. Yes. So why doesn't the failure to follow that available procedure bar them from raising that issue in a refund suit? Because I believe the answer is that the taxpayer has a choice. You don't waive it by virtue of the fact that you didn't, for example, raise it in a… For example, they have a choice in the context of, leaving aside for a second the CDP context, if they got a notice of deficiency in this case, in theory. They could have either sought a petition for a redetermination in tax court or they could have paid the refund and then sought whatever… raised whatever claims against the liability they had in a refund form as opposed to in a tax court form. I don't believe that you would waive your ability to contest the fact that you got a notice of deficiency or that you did not get a notice of deficiency by virtue of a different form. Isn't there a difference in the… Normally, as you pointed out, the taxpayer would have a choice as to which route to proceed and the liability could be litigated in either form. But here we're not talking about the actual liability as such, the merits of the liability, if you will. We're talking about the failure to provide a notice and that issue becomes just a technicality in the context of the case as it's now postured with the government having no recourse. Whereas that matter could have been fully aired had it been presented to the tax court and if there was a deficiency, it could have been remedied at the time. It does seem to suggest that a waiver and a waiver concept would apply under those circumstances, would it not? I agree with you. I very much agree that what's going on here potentially works an unfair result if you adopt the taxpayer's position in this case. And it's unfair because the government has no recourse. Absolutely. Whereas it would have had a recourse had this other path been followed. Yeah, the government, A, has no recourse because at this point it cannot issue a notice of deficiency. And two, the taxpayers have settled. I mean, all of this whole case springs from a settlement in which the effect of the settlement was in the end of the day the government was going to allow them to take a deduction for partnership losses up to the amount of money effectively of investment that they made into a partnership. So basically, they're not withholding. The partnership proceeding in this case in which they were a member until they settled was a partnership proceeding that would have potentially wiped out all of the deductions. And they settled to their own benefit saying we get at least the money that we contributed to the partnership as well as any income that the partnership generated because that also increases at-risk amount. But they don't get the at-risk, they don't get to take partnership losses that they claim that they were at-risk for above those two data points. But since we are dealing with a technicality, that is the notice, why should the taxpayer be in a position to litigate the failure to give the notice both through the 6330 procedure into the tax court or alternatively to seek a refund? I mean, maybe the government needs to consider whether, you know, I don't see that this issue has come up before in any of the cases. Maybe the government needs to consider what its position is about this. I agree with Your Honor. It does have an appeal. I also agree that there is no precedent to consider the waiver based on how the taxpayer goes about raising this particular issue given that there would have been a recourse for the government to correct its error if raised in a different context. In the collection procedure, you could have corrected the error, right? Yeah, so I think if you were to introduce concepts of judicial equity and stuff like that, then I think there is a good argument for a waiver in this case. I don't disagree with Your Honor. Let me shift gears for a moment. I'm going to have a hard time understanding why a partner's at-risk amount isn't always an affected item which requires partner-level determinations, which is the statutory language which compels a notice. Sure. The answer here, I think, in a nutshell is based on settlement agreement. We're not claiming that, you know, even the at-risk determination is by definition an affected item. Treasury regulations state that there's copious amounts of case law that agrees with that concept. And so by definition, that means that the at-risk amount includes both partnership and non-partnership aspects. An affected item is an item that's not a partnership item but is affected by partnership items. And in this case, when the taxpayers resolve their partnership items in the settlement agreements, they also simultaneously said that this is how we'll compute our at-risk amounts. And those amounts could be then computed on the basis of items that are directly lifted from their tax returns. Well, the other side you heard this morning apparently disputes that and raises some issues which theoretically could arise which would not be covered. Well, I think actually what they're arguing is that, well, what about other pieces of liability? What about a liability that has nothing to do with our at-risk amount? And our answer to that is that 6338 doesn't take into account those other aspects of liability. The liability, an affected item that requires partner-level determinations, they did not need a partner-level determination to determine the at-risk amount. They're claiming that a partner-level determination also encompasses their holistic tax liability for the year. And A, I think that that's a wrong construction of the statute because it's not required to determine the at-risk amount. They're saying we should be able to get offsets. I also think it's a wrong construction of the statute because 6330C specifically addresses these issues. And it addresses them in a way that says that taxpayers are provided the ability to claim a refund, bring a refund action, not a notice of deficient VT, but a refund action to say that you either misapplied a settlement agreement or you haven't capitalized the amount appropriately, correctly, by virtue of any potential offsets that we had. So I think that that buttresses the actual language of 6330A. And how would you have us interpret under the definition of confrontational adjustment? How would you interpret, then, the word treatment? Or how would you define the word treatment? I think that treatment in this context means resolving partnership items, period, in the sense that if you step back and you look at the procedure of how TEFRA operates, is that when the IRS takes exception with particular partnership items and it issues an FPAA, a Fire and Partnership Administrative Adjustment, that initiates the ability to bring a lawsuit or to litigate the IRS's treatment of particular partnership items. Yeah, but your problem is that how can this be a computational adjustment since the at-risk capital issue here isn't affected by a partnership item? This is not a situation in which the tax liability of a partner properly reflects the treatment of a partnership item. That's the difficulty. The settlement agreement didn't involve any partnership items and said there was no adjustment of a partnership item. Well, if I could respectfully disagree with that in only this sense, is that to say that there will be no change to the partnership items, to settle on that particular issue, is to give treatment to those partnership items. For example, like in Olson, the fact that the parties settled on what their partnership items would be. Now, I grant you in Olson there was a change to the partnership items, but the fact that they settled is to treat those items for purposes of subsection C, which would be TEFRA. Well, but I'm not understanding this. Okay. If I understand the settlement agreement and the issue that existed with respect to at-risk capital, the controversy did not involve the treatment of any partnership item. Am I correct about that? The controversy here, as far as whether the partnership items caused the liability in this case, the answer is no. I agree with that. Right, but that's your problem. Since they didn't cause the change here, how does this fall within the definition of a computational adjustment? I think that there are two reasons that I can give you, and one of which is that there is no causation requirement, I think, if you carefully read the language of the statute. It says computational adjustments meet the change in tax liability. So you need a change in tax liability. I grant you that. Of a partnership item which properly reflects the treatment under the subchapter C, which is TEFRA, of a partnership item. Now, I believe that the proper reading of that case is that within the context of looking at TEFRA as a whole, what you do is you resolve your partnership items, and then what happens is that the IRS needs to go and then make adjustments to affected items. And there are two ways in which the IRS then adjusts the affected items. The one way is they do it by computational adjustment. And so you have changes that are effectively mathematical. And then the other way is that it takes a position that it recognizes requires a partner-level determination. It takes issue with something else that's not considered at the partnership. Well, I understand your argument that there was no further partner-level determination required here, and that seems to be sensible. I think the taxpayer's argument on that point is not very strong. Okay. But I understand that we're making two arguments, and the other one is that this was this at-risk capital item, which is an affected item, was not, in fact, affected by the treatment of a partnership item, so we're not dealing with a computational adjustment. And that seems to be a strong argument. I respectfully disagree for this reason, is that the point in time in which you consider affected items is, I agree with opposing counsel in this case, is that you do not treat affected items at the partnership level. And so at the end of a partnership proceeding, you calculate your affected items. And as I said, there are one or two tracks, basically, one or two categories in which that calculation is made. Now, if the government can calculate that without making any factual determinations, I do not think it matters. I actually would say it would be a red herring to say that just because the calculation, as mathematical as it was, was not based on, you know, if we really tried to tie back to the origins to see what the first mover of the liability, of the change in liability is, it's actually a non-partnership item as opposed to a partnership item. I'm not sure I'm following you because it seems to me what you're suggesting would read out of the statutory definition that phrase about which properly reflects the treatment of the partnership item. But if you would agree that resolving the partnership items in any capacity, it basically says that you can't compute, you can't make computational adjustments until the partnership items have already been determined. Well, it says a little more than that. It says it properly reflects the treatment of. Right. And so, but the thing is, is that when you have a, when you've resolved the partnership items in a partnership proceeding, then the TAFRA proceeding is effectively over. And again, that can happen by settlement or by, you know, more formal proceedings. But at that point, you have the fact that the partner, very clearly to me, at least I would say that the fact that you have treatment as opposed to change in partnership items means that the partnership items need not change. The tax liability needs to change. And the fact that the court has said in Olson, and I think accurately, that properly reflects means with mathematical, properly means with mathematical certainty. But aren't the taxpayers here arguing that you can't determine the tax liability with mathematical certainty because there are partner level issues that may remain to be resolved? To the extent that there's the tax liability is liability that's otherwise that could offset this particular liability based on 465 at risk amount. I think that's what they're arguing. And that would be our point. Our position on that is that that's irrelevant. That has nothing to do with calculating the liability. It has to how you how you're going to pay that liability would be, you know, offsetting that liability. It doesn't mean that you can't calculate the liability based on an at risk amount with mathematical certainty. But they're saying had they received the notice, then they would have been able to challenge some of the calculations with regard to their partner level tax liability. Right. And it seems to me the statute doesn't that the computational adjustment language of the statute doesn't address that. I think that 6230C does address it, however. 6230C. Correct. Claims arising out of erroneous computation. Yes. So, for example, C1B says a partner if I were to claim for a refund on grounds that the secretary failed to allow a credit or to make a refund to the partner in the amount of an overpayment attributable to the application to the partner of a settlement. And so, therefore, when there's no question as to the basic liability that flows from 465, which both parties in this case agree that the liability at issue here is a liability on the basis of their at risk amount. They're saying is that, well, what we should have had to pay should have been less. You erroneously assessed us because there are other things that we could have potentially raised. I think the problem with that is that the statute clearly says that in that context, when you're claiming what the government has is that, for instance, they didn't apply a carry back from a later year to that tax year. And so, therefore, you know, they assess too much and they also assess too much interest in that context. I think that 6230C1B says that you seek a refund form. And I believe my time is up unless there are other questions. All right. Thank you very much. Thank you, Your Honor. Mr. Redding, any comments? Yes, Your Honor. I very much appreciate having the time restored. Can I just ask you a housekeeping question before you do that? And do you agree that there's no factual difference in the two cases in terms that would affect the outcome? Shelton and yes, absolutely. Help me understand this argument about affected items which require partner level determinations. What partner level determination was required here with respect to the affected item? I asked to determine the amount at risk. Whether or not the partner was allowed to take into account part of the partnership debt that was agreed to be valid debt. That requires an assumption by the partner individually outside of the scope of the partnership. But there was no issue about that here, right? There was no issue once it was settled, Your Honor. By the settlement agreement. I agree. So once the settlement agreement was signed, there was no longer any need for a partner level determination. To determine his tax liability, there would be. To determine the at risk amount, there would not be. That is correct, Your Honor. But the distinction is very important. Because if you have the right to the stat notice, then you have a right to raise anything else that goes to the issue of his tax liability. Statutory notice of deficiency isn't a notice that we've adjusted your at risk amount in the partnership by this amount. It is that we have made a determination that your tax liability for the year is adjusted to this. You're basically saying that a notice of deficiency is always required because there could always be some other issues. I'm having trouble with that. It seems to me that once the settlement agreement has resolved the partner level issues, the partnership items, that there isn't any further need for a determination at the partnership level. And that at least that part of your argument. I understand you've got another argument. But at least that part of your argument is sort of weak. Your Honor, our argument is not that we have a right to raise anything else that is a partnership item. We've never made that argument. I'm sorry if the court has misunderstood us. Our argument is simply that we have the right to raise anything else that would affect his liability, including whether or not the settlement agreement was properly applied as to the later years. But you agree that the, just to be clear about this, you agree that the at risk amount doesn't, once the settlement agreement was signed, didn't require any further partnership level determination. Partnership level? No sir, absolutely not. Yes, I agree. Okay. Absolutely. Your Honor, I'd like to briefly make an additional comment about the 6330 application. To have a right to even have a right to a hearing under 6330, the taxpayer has to first decide to disregard the assessment notice, let 30 day, 60 day, 90 day notices go unresponded to, wait until he receives not only a 30 day notice of intent to levy, but also a written notice of his right then to a CDP hearing. In the meantime, he has to let interest accrue and failure to pay penalties accrue. A taxpayer goes to extreme risk in relying on a 6330 hearing. That is intended as a last resort. And I ask the court, please don't make that somehow a waiver of a right to go to tax court where a stat notice is required. Because I don't think that's ever what Congress intended with that. The argument that 6330C somehow gives the taxpayer the right to do these things is also not correct. 6230, those provisions are special refund provisions that apply where a TAFRA partnership related assessment, an assessment resulting from partnership item changes has been made, and the taxpayer asserts that the government either erroneously computed the liability. Now, that computation, the government is not required to look at anything other than that one adjustment. So you can't say under 6330C that it was an erroneous computation. If you're going to raise other issues, such as income averaging, such as innocent spouse, etc., that's not a 6330C claim. It's not the nature of a 6230C claim. Lastly, just as to the whole issue of what's fair and what's unfair. You know, every time a taxpayer's refund claim is denied based on statute of limitations, whether the merits are in their favor, that's unfair. Our tax law does that. There are instances where there's a bright-line test that you have to comply with something, and if you don't, then you lose. And the courts have long held that where statutory notice of deficiency is required, just as in Singleton, that the assessment is invalid if they don't issue it. And that rule needs to continue to be there to protect taxpayers. My time is up. Thank you, Your Honor. All right. I thank both counsel. And before you leave the counsel tables, the court would request that you submit a supplemental brief on the applicability of Section 6330 and this issue of waiver that we've been discussing. If you could do that, no more than 10 pages, double-spaced, within 15 days, that would be much appreciated. Your Honor, may I ask for 30 days? I'd leave from here to fly to Dallas to leave on a motorcycle vacation into the remote mountains. I'm not even flying back to Houston. He might say you've been problems. I'd save my life, but you'd destroy my stomach. 30 days is fine. Thank you. Enjoy your trip.  The cases are submitted. Thank you, Your Honor.